Ralph DeNune, III, Toledo, Ohio, for defendant.

**UNITED STATES of America, Plaintiff,**

**v.**

**John VANDERHORST, Defendant.**

**No. CR 83–103.**

United States District Court, N.D. Ohio, W.D.

June 12, 1984.

## MEMORANDUM AND ORDER

DON J. YOUNG, Senior District Judge.

On January 30, 1984, after a plea of guilty to a five count information charging violations of Title 18 U.S.C. § 287, the defendant was sentenced to imprisonment for a term of five (5) years, with parole eligibility at any time under the provisions of 18 U.S.C. § 4205(b)(2), on the first count. On the remaining four counts, imposition of sentence was suspended, and the defendant placed on probation for a term of three (3) years. The sentences on counts 2 through 5 were ordered to be consecutive to the sentence on count 1, but concurrent with each other.

The defendant has timely filed a motion for reduction of sentence. He asks that the sentence on count 1 be reduced to a split sentence, with six (6) months to be served in prison, and the execution of the remainder of the sentence suspended and the defendant placed on probation, with special conditions of probation that the defendant be committed to a community treatment center, and required to do a fixed amount of community service.

In support of his motion, the defendant files an elaborate document denominated "A Client Specific Planning Proposal for John R. Vanderhorst", prepared by the National Center on Institutions and Alternatives, of Alexandria, Virginia. This proposal, which is approximately three-eighths of

an inch (⅜″) thick, elaborates on the details of the proposed reduced sentence sought by the defendant, and the reasons for reducing it.

In spite of its impressive dimensions, the proposal does not actually set forth any facts or sentencing alternatives that were not before the Court and carefully explored and considered before sentence was imposed. Before sentencing, the Court explored these matters in depth with the Probation Department. The Court was aware of the possibilities of using a community treatment center for incarceration, and the opportunities for and advantages of community service obligations. Fixing sentence in this matter was very difficult, and required much time and travail on the part of the Court.

The only thing that varies from what the Court hoped could be accomplished in the defendant's sentence is that while the Court recommended that the defendant be incarcerated as close to Toledo, Ohio, as possible, preferably in the Milan Correctional Institution, he is actually confined in Terre Haute, Indiana, some three hundred miles distant. However, the Court had no illusions at the time of sentencing that it is frequently impossible for the Bureau of Prisons to follow recommendations concerning the institution where a defendant must be confined. Recommendations are no more than that, and often, as here, prove to be a forlorn hope, no more.

The Court also recommended that the defendant should be granted parole after no more than eighteen (18) months imprisonment, which is below the guidelines in defendant's case. The defendant argues that the Board of Parole will not accept this Court's recommendations any more than the Bureau of Prisons did. This does not necessarily follow. It is also suggested that it would be improper for the Court to delay ruling on the defendant's current motion to see whether the Board of Parole disregards the recommendation, so that the defendant's sentence could be reduced to time served, and the Board of Parole's adherence to its guidelines be frustrated by

this Court. The Congress has placed the matter of the length of sentence with the Board of Parole, and taken from the Courts their traditional power to impose sentence, except to a very limited extent, but under the Constitution and the law, the Congress has the power to do what it did. The Courts have no right to exceed the limits of their power at the expense of the other two branches of the government. This Court will certainly not attempt to do so in this case.

Basically, what the defendant argues by his "Client Specific Planning Proposal" is that the Court's sentence imposes tremendous hardships upon his family, to the extent that if not reduced, the sentence will ultimately destroy both him and his family. He also argues that demonstrably the harsh sentence has, so far, not had any deterrent effects upon a group of ambulance companies, social workers, and physicians, who are continuing to commit the identical offenses for which he is being punished. Hence, since the defendant's sentence is not deterring others, it should not be imposed on him. The defects in this argument are too numerous and too obvious to require much further comment.

The matter of imposing sentence in a particular case is often one of difficulty, because there are so many different objectives involved, and many conflicting elements which the sentencing court must attempt to harmonize into a reasonably consistent whole. Those seeking to attack a sentence invariably pick out one or two objectives or elements, and disregard all the others. When the Court has striven conscientiously to give proper weight to each element, and to reach a solution to a problem of great complexity, it is difficult to be patient with simplistic arguments.

In this case, the sentencing objectives of attempting to deter others from committing the offense defendant did was an important consideration in reaching the sentencing decision. But because in this case, as distinguished from some others, the deterrent effect has not been apparent immediately, does that mean that it will never

become apparent? Obviously, if the sentence is reduced, all possibility of a future deterrent effect will be eliminated. Actually, reduction of sentence would not just have a neutral effect, it would have a negative effect, for it would send to the public the message that future violators, if apprehended and convicted, won't really suffer more than temporary inconvenience. The longer this defendant actually remains confined, the more those who are still committing the same offense see the defendant's suffering and that of his family and friends, the riskier their continued violations become.

But quite apart from questions of deterrence, there are many other elements involved in the sentence which was imposed. It is very clear that in the mind of the public, the real purpose of a criminal sentence is to punish the criminal for committing the crime. The legislative branch of the government, which is the branch that has the greatest responsibility for expressing the will of the people, demonstrates this view in the constant movement toward mandatory sentences, provisions requiring the stacking of sentences, and statutes restricting or abolishing probation and parole. The idea of punishment is that it should be proportional to the magnitude of the offense.

In this case, although there is perhaps some dispute as to the exact amount the government lost, and the defendant gained, by his criminal activity, there is no doubt that the amount was very large. The government claims it to have been from half a million to a million dollars. These were not petty offenses.

In this case also, an extremely high level of criminal intent was involved. The defendant's acts were not by mistake, or accident, or other innocent reason. They were coldly and calculatedly done to make a profit. They cannot be excused, as defendant and his advocates attempt to excuse them, by saying that he had a very humani-

tarian purpose; that he was trying to help people who were poor and old to get medical treatment necessary to keep them from dying in agony. Human nature being what it is, kindness rendered at a substantial cash profit to the renderer is dubious charity at best.

The large scale of the criminal activity, and the high degree of criminal intent involved, demand greater punishment than a figurative slap on the wrist.

Another fallacy in the defendant's argument is the implicit one that since other persons who committed or are committing the same offense have, so far, done so with impunity, he should not be punished for his crimes. That is a very common argument against punishment, especially among children. Sentencing, however, is not a children's game, to be played by childish rules. "Societies cannot function with men acting as children."[1] If an act is wrong, it is equally wrong whether the wrongdoer is or is not punished for it in the manner provided by statute.

In this aspect, both by law—ancient law—and by reason, the power and duty to act are not the Court's. They belong to the executive branch of the government, to the prosecutor. It is axiomatic that there can be no justice when the same person is both judge and prosecutor. The Court cannot, therefore, arrogate to itself the power and duty of the prosecutor, either directly, by causing criminal charges to be brought against particular individuals, or indirectly, by refusing to punish those who are prosecuted simply to penalize the government for not prosecuting others who may be equally guilty.

As was stated at the outset of this memorandum, nothing has been raised by the defendant in his motion that was not before the Court and carefully considered before sentence was imposed. The Court has, nevertheless, again weighed and considered all those things necessary to the proper imposition of sentence. Having done so,

---

1. Lawry, *Justice in Billy Budd,* 31 In Brief, June, 1984, at 13, 16. (Case Western Reserve University Law Alumni News Bulletin)

**32**

the Court concludes that the sentence previously imposed is appropriate, and should not be changed.

THEREFORE, for the reasons stated, good cause therefor appearing, it is

ORDERED that the motion of the defendant for reduction of sentence should be, and it hereby is, OVERRULED.

IT IS SO ORDERED.